## W. T. RAWLEIGH CO. v. HARPER et al.
### (No. 1239—5274.)

Commission of Appeals of Texas, Section A.
May 29, 1929.

Barney A. Garrett, of Waco, and Garrett & Garrett, of Jacksonville, for plaintiff in error.

Williams, Williams, McClellan & Lincoln, of Waco, for defendants in error.

CRITZ, J. We copy the following statement of the case from the opinion of the Court of Civil Appeals, which is reported in 7 S.W.(2d) 892:

"Suit by appellant, an Illinois corporation, against appellees Robert Harper, as principal, and J. D. Taylor, T. B. Stanford, and W. B. Stanford, as guarantors, for $1,158.84, alleged to be due appellant for Rawleigh products sold by appellant to appellee Robert Harper under and by virtue of the terms of a written contract. Appellees answered specially that the contract sued upon did not constitute the entire contract and agreement between appellant and appellee Harper; that both before and after the execution of the so-called written contract declared upon plaintiff, by instructions both verbal and in writing and by printed literature, by letters, circulars, and other printed matter, imposed upon defendant Harper terms, conditions, and requirements as parts of said contract in making disposition of the products so purchased from the Rawleigh Company, which terms, conditions, and requirements were, and are, in violation of the anti-trust laws of the state of Texas (Rev. St. 1925, arts. 7426–7447), in that, prior and subsequent to the execution of the so-called written contract declared upon, plaintiff, by letters, documents, etc., required defendant Harper, as a part of said contract and as a condition of selling him its goods, to select certain territory and to confine his resale of said products to said territory, and also required Harper to devote the whole of his time to the sale of plaintiff's products, and also plaintiff, by the means above mentioned, required Harper to sell said goods at a price fixed by plaintiff, etc.

"In response to special issues, the jury found:

" '(1) That there was no agreement and understanding between plaintiff, W. T. Rawleigh Company, and defendant Robert Harper, in connection with the written contract, that the said Robert Harper was to sell the goods of plaintiff only in the territory described as the western part of Limstone county, Tex.

" '(2) There was an agreement and understanding by and between the plaintiff, W. T. Rawleigh Company, and the defendant Robert Harper, in connection with said written contract, that the defendant Harper was to devote his entire time, skill, and attention to the business of selling goods purchased from the plaintiff by him.

" '(3) There was no agreement and understanding between the Rawleigh Company and Harper in connection with said written contract, that the said Harper was to sell the goods bought from plaintiff at a price fixed by plaintiff, Rawleigh Company.'

"Upon the answer of the jury to special issue No. 2 above, and such other findings as the court was authorized from the pleading and evidence to make, the court entered judgment for appellees. Appellant has duly appealed, and presents the record here for review."

### Opinion.

In our opinion the above verdict absolutely exonerates plaintiff of violating any of the anti-trust statutes of this state.

Under the issues as made in the trial court, by the evidence and the pleadings, the verdict of the jury is to the effect: That the plaintiff and Robert Harper had no agreement as to where the goods purchased by Harper from the plaintiff should be sold, and therefore, under the contract, said goods

could be sold anywhere in the world; that plaintiff and Harper did have an agreement that Harper should devote his entire time and skill to the sale of such goods, but, since there was no agreement as to where such goods were to be sold, they did not agree that same were to be sold in Texas; and, finally, there was no agreement as to the resale price of such goods. It therefore follows that according to the express and affirmative findings of the jury there was no agreement to do anything at any particular place, and, if no particular place was contracted about or designated, certainly there was no agreement or conspiracy to violate any Texas statute in Texas. The uncontroverted evidence further conclusively shows that Harper did not devote all of his time in Texas, or anywhere else, to selling of the goods bought from plaintiff.

■ We are aware that under our laws, even as applied to interstate shipments, a contract whose purpose and intent is to effect a direct outright sale wherein the property sold becomes a part of the common mass of property in this state, and subject to its laws, is to be resold in such a manner or under such restrictions as to constitute a violation of our laws against monopolies and in restraint of trade, such a contract is void and not enforcible in our courts. W. T. Rawleigh Co. v. Land (Tex. Civ. App.) 261 S. W. 186; Id., 115 Tex. 319, 279 S. W. 810 (Com. App.). In other words, if such goods are sold outright, and, after they become a part of the common mass of property in Texas, are subject to a contract in violation of our antitrust laws, as a condition precedent to the sale, then the contract is rendered illegal and is not enforcible in our courts. In the case before us no such contract is involved. Under the express findings of the jury there could have been no agreement to violate any law of Texas, in Texas, as there was no agreement as to where said goods were to be resold.

In W. T. Rawleigh Co. v. Land, supra, our Supreme Court, in adopting the judgment recommended by the Commission, used language expressly approving the holding of the Court of Civil Appeals, in the same case, 261 S. W. 186. In its opinion the Supreme Court expressly held that, in order for such a contract involving an interstate shipment to be void and unenforceable in our courts, it must evidence or show a purpose or intent to violate our anti-trust laws within this state, and that the obligation arose in consummation of that purpose. No such condition is shown in this case as was shown and found in the Land Case. Further, no such condition is shown in this case as was shown in the Henderson Tire & Rubber Co. Case. (Tex. Com. App.) 12 S.W.(2d) 154. In both of those cases there was shown a purpose and intent to sell the goods under a contract prepared and signed to cause a violation of our anti-trust laws within this state, and in both of those cases the obligation sued on arose in consummation of such purpose. In the present case there is an express jury finding that no particular place was designated for the resale of the property sold by plaintiff to Harper.

The only thing relied on by defendants to excuse them from liability is the finding of the jury that Harper was to devote all his time and skill to a sale of goods bought from plaintiff. Even if such a contract is in violation of our laws against monopolies and in restraint of trade, still the verdict as a whole is for plaintiff, as it affirmatively finds there was no agreement restricting territory, and therefore under the pleadings and evidence in this case affirmatively finds there was no agreement as to where said goods should be sold. The verdict is for the plaintiff, and judgment should have been so entered.

We do not wish to be understood as holding that, if the goods had been sold under a contract binding Harper to devote all his time and skill to a resale of such products in Texas, such a contract would, as a matter of law, be a violation of our anti-trust statutes. What we hold is that no such contract is involved in this case, and therefore we express no opinion as to its legality.

We recommend that the judgments of the district court and the Court of Civil Appeals be both reversed, and judgment here rendered for the plaintiff in error for the sum of $1,158.84, with 6 per cent. interest from January 1, 1925, and all costs.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.